UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BRIAN CORNWELL** | \* | **CIVIL ACTION NO. 24-926** |
| **VERSUS** | \* | **JUDGE ELDON E. FALLON** |
| **EXTREME TACTICAL COMPONENTS, LLC, A.K.A. EXTREME AIR RIFLES, LLC, A.K.A. EXTREME BIG BORE AIR RIFLES, TEXAS MACHINE PARTS, LLC, DANNY DUKE, AND JOHN WILEY** | \*  \* \* | **MAGISTRATE JUDGE MICHAEL B. NORTH** |

\*   \*   \*   \*   \*   \*   \*

## ORDER & REASONS

Before the Court is a motion to exclude Plaintiff's experts or, alternatively, to exclude any testimony from them related to medical causation filed by Defendants Texas Machine Parts, Danny Duke, and John Wiley (collectively, "Defendants"). R. Doc. 57. Plaintiff opposed the motion. R. Doc. 62. Defendants replied. R. Doc. 63. Considering the record, briefing, and applicable law, the Court now rules as follows.

**I.    BACKGROUND**

This is a products liability case arising from an alleged injury caused by an air rifle. Plaintiff Brian Cornwell ("Cornwell") ordered an air rifle from Extreme Big Bore Air Rifles on March 25, 2021. R. Doc. 49-13 at 2; R. Doc. 59-6 at 1. He regularly used the air rifle for nearly two years before the subject incident. R. Doc. 49-13 at 2; R. Doc. 59-6 at 1 Before firing this kind of air rifle, Plaintiff would need to fill it with compressed air from time to time. *See* R. Doc. 66 at 5. On the morning of January 11, 2023, Plaintiff sought to fill the air rifle with compressed air. *Id.* He followed the filling instructions—which were prepared by Defendants—that specified, "You may

need to cover the barrel with your finger when filling." *Id.*; R. Doc. 59-1 at 3. In his complaint,[1] Plaintiff describes that "while using the product according to the . . . instructions," the air rifle "discharged while petitioner's left thumb was located over the barrel." R. Doc. 2-2 at 2–3. Plaintiff explained that his "left thumb was blown open" and his thumb "bone tip" was blown off as a result of him following Defendants' instructions to place his thumb over the barrel of the air rifle when filling it with air. *Id.* at 2.

Plaintiff brought claims against Defendants pursuant to the Louisiana Products Liability Act ("LPLA"), in redhibition pursuant to La. Civ. Code art. 2520 *et seq.*, and for a rescission of the sale pursuant to La. Civ. Code art. 2545. *Id.* at 4. He seeks damages for disfigurement, pain and suffering, medical treatment, and lost income. *Id.*

## II.    PRESENT MOTION

Defendants ask the Court to exclude the reports and testimony of two of Plaintiff's experts, Kennith Comeaux ("Comeaux") and William Caster ("Caster") at the trial of this matter. R. Doc. 57. Defendants explicitly challenge each expert on all of Rule 702's requirements, including whether (1) the experts' specialized knowledge will assist the jury, (2) the testimony is based on sufficient facts or data, (3) the testimony is the product of reliable principals and methods, and (4) their opinions reliably apply the principles and methods to the facts at hand. R. Doc. 57-1 at 4–9. Defendants also request that neither expert be permitted to testify as to medical causation because neither Comeaux nor Caster are or ever were medical doctors. *Id.* at 20–21. Additionally, Defendants devote a considerable portion of the briefing arguing that neither expert assists Plaintiff

---

[1] There are three total complaints in this case. *See* R. Doc. 67 (granting the dismissal of all claims brought in the second amended complaint). Plaintiff's original state court petition names Texas Machine Parts, Danny Duke, and John Wiley and asserts LPLA, redhibition, and recission of sale claims against those defendants. R. Doc. 2-2. The first amended complaint names Admiral Insurance Company as an alleged insurer of the manufacturing defendants. R. Doc. 24. The factual allegations are consistent across both relevant pleadings. The Court states "complaint" here for simplicity.

2

in supporting his LPLA claims—arguments more appropriately considered on summary judgment. *E.g.*, *id.* at 15–19. To the extent these arguments are helpful in determining the relevance of these experts' reports and testimony, the Court will consider the arguments.

Plaintiff opposed the motion. R. Doc. 62. He argues that the experts' testimony clearly demonstrates that their professional experiences substantiate their ability to assist the jury in understanding issues of fact. *Id.* at 6–9. Moreover, their testimony will be based on sufficient facts because both experts were able to inspect, test, and handle the air rifle at issue in this case. *Id.* at 4. As to reliable methodology, Plaintiff contends that each expert used the kind of "inspection, hands-on evaluation, and professional judgment" that an expert offering experience-based testimony may use pursuant to *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *Id.*

Defendants replied, largely addressing the portions of Plaintiff's arguments that do not discuss Rule 702's requirements. R. Doc. 63. They also request the Court strike the expert affidavits attached to Plaintiff's opposition as impermissible additional expert reports.[2] *Id.*

### III.  LEGAL STANDARD

District courts have discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 of the Federal Rules of Evidence requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." The Supreme Court extended *Daubert*'s applicability to experts who testify based on technical and specialized knowledge, noting that *Daubert*'s gatekeeping requirement to ensure the reliability and relevancy of expert testimony "is

---

[2]  For reasons that will be stated in the Court's Order & Reasons on Defendants' summary judgment motion, the Court will not consider the expert affidavits as competent summary judgment evidence. As to the present motion, the Court will not utilize the contents of the affidavits because the contents do not assist the Court in its Rule 702 analysis.

3

to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Rule 702 of the Federal Rules of Evidence sets forth the framework governing the admissibility of expert testimony. "The object of Rule 702 is to protect juries from unreliable and irrelevant expert testimony." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

First, Rule 702 requires that an expert must be properly qualified. "[G]enerally, however, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications." *Urda v. Valmont Indus., Inc.*, 561 F. Supp. 3d 632, 638 (M.D. La. 2021).

Second, an expert's testimony must be reliable. The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93; *Kumho Tire*, 526 U.S. at 152–53. In *Daubert*, the Supreme Court listed several non-exclusive factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Daubert*, 509 U.S. at

593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150. In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Third, expert testimony must also be relevant. Testimony is relevant if the expert's reasoning and methodology "fits" the facts of the case and the testimony will assist the trier of fact to understand the evidence. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003).

### IV. ANALYSIS

Defendants ask the Court to exclude Comeaux and Caster because neither expert satisfies each of Rule 702's requirements. For the following reasons, the Court will allow both Comeaux and Caster to testify at this trial.

#### A. Kennith Comeaux

Plaintiff plans to offer Comeaux as an expert gunsmith. R. Doc. 62 at 1. Comeaux testified that he anticipates providing insight at trial to the "function[s] of air rifles and their safety." R. Doc. 57-4 at 33–34. He has thirty-five years of experience as a gunsmith and owns his own business, Comeaux's Gun Clinic, LLC. R. Doc. 57-4 at 8, 29–30. Because of his familiarity with guns, in his other career as a certified ISO 9000 quality auditor, he "was allowed to audit firearms

manufacturers and ammunition manufacturers" to determine if the companies could get ISO certified by meeting "an international standard associated with quality that is very similar to OSHA with respect to safety, but . . . for quality." *Id.* at 29. Though Comeaux acknowledges that he is not an expert in gun manufacturing, *id.* at 34, his experience in being able to quality-audit firearms and ammunition manufacturers underscores his gunsmithing experience. Comeaux satisfies the specialized knowledge requirement of Rule 702.

Comeaux also relied on sufficient facts and data to reach his conclusions and utilized reliable principals and methods. Importantly, he personally inspected the air rifle as well as consulted an American Society for Testing and Materials (ASTM) manual, looked at the subject air rifle's owner's manual as well as the owner's manuals of other similar rifles, and researched other manufacturer's diagrams. *Id.* at 46–50. Comeaux also explained his methodology and how it comports with the ASTM and could be replicated by others. *Id.* at 56–60. His decades-long experience as a gunsmith, combined with the foregoing, allows this Court to find that Comeaux's report and testimony are sufficiently reliable. *See Puga v. RCS Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) ("As a general rule, questions related to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility.").

It is also clear that Comeaux's testimony will assist the trier of fact and is relevant. For example, one line of Comeaux's report reads: "Further attempts to seat the exhaust valve without removal of the air chamber cap were unsuccessful including lubrication with Teflon oil." R. Doc. 62-1 at 2. This shows that Comeaux will provide testimony that goes beyond "common sense." *See Volger*, 352 F.3d at 155. Moreover, this sort of testimony is relevant because Plaintiff's claims are based in the alleged faulty function and design of the valves in the subject air rifle and a replacement valve assembly, and Comeaux's report and testimony reflects his personal evaluation

of the air rifle and its replacement valve. Overall, Comeaux is qualified to offer testimony as a gunsmith because the record demonstrates that it is "more likely than not that" he satisfies Rule 702.

### B. William Caster

The Court now turns to Caster, who is being offered as an air mechanics expert. R. Doc. 62 at 1. He holds a certification from the National Balancing Council, "a group that educates and teaches in air balancing and hydronic balancing, which is airflow CFM delivery, pressure, and velocity." R. Doc. 57-5 at 16. Caster has held this certification since 2003 and maintains it to this day. *Id.* at 16–17. Presently, he "own[s] a consulting company for heating, ventilation and air conditioning, airflow dynamics, hydronic testing, [and] air testing." *Id.* at 9. In this case, he utilized this specialized knowledge to address the PSI testing and capability of componentry, such as the air tank and the air compressor, that was involved in the use of the subject air rifle. *Id.* at 17–18. His report explains his "opinions . . . specific to this case" relate to whether "the components [of the air rifle] that were there on site could obtain a pressure beyond the capability of said gun." *Id.* at 20. The Court finds that Caster holds relevant specialized knowledge.

Caster's testimony is also based on sufficient facts and data. Like Comeaux, Caster personally inspected the air rifle at issue. *See* R. Doc. 62-2. He conducted research on the relevant parts included in his testing. *Id.* at 1; R. Doc. 57-5 at 53. Moreover, he limited his testing to his discipline, explaining that he did not operate or fill the air rifle during his testing because he "went there to find out if the equipment that [Plaintiff] utilized for filling the gun exceeded the capabilities or burst pressure of the gun." *Id.* at 71. As to reliable principles and methods, Caster did not conduct explicit testing like Comeaux, but rather researched and observed whether Plaintiff possessed the "tooling to be able to" fill the air rifle's air tank beyond its PSI specifications. *Id.* at 75. Caster

7

explained that he based his conclusions off "the actual flow chart of the gun from the tank to the valve to the barrel" because "[t]he only point of when [] air can enter into the chamber is when the valve is released." *Id.* at 84. Considering these circumstances, the Court finds that Caster is qualified to testify at trial based on his experience and the nature and formulation of his opinions. *See Puga*, 922 F.3d at 294 ("the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration"). Moreover, details about PSI specifications and an air tank's filling capabilities are not "well within the common sense understanding of jurors" and thus will be aided by Caster's expert testimony. *Vogler*, 352 F.3d at 155.

Finally, the Court stresses that it is "the role of the adversarial system, not the court, to highlight weak evidence." *Primrose Op. Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The fact that opposing parties do not agree with the facts relied upon by the experts or their interpretation of those facts does not render their opinions irrelevant or unreliable; challenges related to the basis of any of the experts' opinions are thus best suited for cross-examination, not exclusion under Rule 702. *Delta Towing, LLC v. Justrabo*, No. 08-3651, 2009 WL 3763868, at *4 (E.D. La. Nov. 9, 2009).

### C. Medical Causation Testimony

Defendants ask in the title of their motion, though only discuss Caster in the text, that both Comeaux and Caster be excluded from offering medical causation testimony because they are not medical doctors. R. Doc. 57-1 at 20–21. To the extent either expert anticipates opining on medical causation at the trial of this matter, the Court will foreclose them from offering any such testimony.

8

Neither Comeaux nor Caster are medical doctors. Courts in this circuit have consistently held that "medical causation testimony is reserved for certified medical doctors." *Howard v. J&B Hauling, Inc.*, No. 22-993, 2024 WL 4647822, at *5, n.68 (noting cases).

## V. CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that Defendants' motion in limine to exclude Comeaux and Caster, R. Doc. 57, is **DENIED**.

New Orleans, Louisiana, this 15th day of January, 2026.

                                                      THE HONORABLE ELDON E. FALLON