UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRIAN CORNWELL | * | CIVIL ACTION NO. 24-926 |
| VERSUS | * | JUDGE ELDON E. FALLON |
| EXTREME TACTICAL COMPONENTS, LLC, A.K.A. EXTREME AIR RIFLES, LLC, A.K.A. EXTREME BIG BORE AIR RIFLES, TEXAS MACHINE PARTS, LLC, DANNY DUKE, AND JOHN WILEY | * * * * | MAGISTRATE JUDGE MICHAEL B. NORTH |

\* \* \* \* \* \* \*

## ORDER & REASONS

Before the Court is a motion for partial summary judgment filed by Defendants Texas Machine Parts, Danny Duke, and John Wiley (collectively, "Defendants"). R. Doc. 49. Plaintiff opposed the motion. R. Doc. 59. Defendants replied. R. Doc. 64. Considering the record, briefing, and applicable law, the Court now rules as follows.

## I.    BACKGROUND

This is a products liability case arising from an alleged injury caused by an air rifle. Plaintiff Brian Cornwell ("Cornwell") ordered an air rifle from Extreme Big Bore Air Rifles on March 25, 2021. R. Doc. 49-13 at 2; 59-6 at 1. After regularly using the rifle for nearly two years, on January 11, 2023, Plaintiff injured himself while attempting to fill the air rifle with compressed air. R. Doc. 49-13 at 2; 59-6 at 1; 66 at 5. Defendants' air rifle filling instructions state that, when filling it with compressed air, "You may need to cover the barrel with your finger." R. Doc. 59-1 at 3. According to Plaintiff, while attempting to fill the air rifle with compressed air—and with his thumb over the barrel as instructed by the manual—the valve failed to seat and the air rifle "discharged while petitioner's left thumb was located over the barrel." *E.g.*, R. Doc. 2-2 at 2–3. As a result, he alleges that his "left thumb was blown open" and his thumb "bone tip" was blown off. *Id.* at 2.

Plaintiff brought claims against Defendants pursuant to the Louisiana Products Liability Act ("LPLA"), redhibition pursuant to La. Civ. Code art. 2520 *et seq.*, and for a rescission of the sale pursuant to La. Civ. Code art. 2545. *Id.* at 4. He seeks damages for disfigurement, pain and suffering, medical treatment, and lost income. *Id.*

## II.    PRESENT MOTION

Defendants ask this Court to grant summary judgment in their favor on four of Plaintiff's six total liability theories. R. Doc. 49. They request a dismissal with prejudice three of the four claims provided for in the LPLA: construction/manufacturing defect pursuant to La. R.S. § 9:2800.55, design defect pursuant to La. R.S. § 9:2800.56, and breach of express warranty pursuant to La. R.S. § 9:2800.58. *Id.* They also request the Court dismiss with prejudice Plaintiff's redhibition claims. *Id.*

Turning to the LPLA claims, Defendants first argue that Plaintiff has no evidence of a design defect because "to the extent his experts suggested an alternative design," neither expert opined on the second element of a defective design claim—the "likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design." R. Doc. 49-1 at 12–13; La. R.S. § 9:2800.56. Concerning the construction/manufacturing defect claim, Defendants take the position that neither of Plaintiff's experts explain how or why "at the time the product left its manufacturer's control, [it] deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." R. Doc. 49-1 at 15–16; La. R.S. § 9:2800.55. And regarding the breach of express warranty claim, Defendants press that neither Plaintiff nor his experts have identified an express warranty that could have been breached by the manufacturer. R. Doc. 49-1 at 17.

2

Defendants also argue that Plaintiff has no factual support for his redhibition claim because Plaintiff consistently used and modified the air rifle during the near-two-year period that he owned it before the date of injury. *Id.* at 17–18. They argue that, as a result of this consistent use, Plaintiff cannot plausibly claim that the air rifle was completely useless for its intended purpose or was so inconvenient that had Cornwell known of the defect at the time of purchase, he would not have purchased the air rifle. *Id.* at 17–18.

Plaintiff opposed the motion. R. Doc. 59. He generally asserts that his expert reports, together with the expert affidavits attached to his opposition, create sufficient material facts to allow each of his claims to survive summary judgment. *Id.* He also presses a fact that he asserts Defendants "evade[d]" addressing in their motion: his claims pertain to two products. *Id.* Both the air rifle itself and a separate product, the "second valve assembly"—a replacement valve assembly that Plaintiff purchased from Defendants and installed himself into the air rifle shortly before the subject accident—are alleged to be defective. *Id.*

Plaintiff defends his LPLA construction/manufacturing defect claim by referencing the deposition testimony of John Wiley ("Wiley"), a named defendant and principal of Texas Machine Parts, arguing that his testimony gives rise to the inference that other air rifles previously manufactured by Defendants do not contain the same manufacturing defect at issue here. *Id.* at 6–7. On the design defect claim, he contends that the report and testimony of his gunsmith expert explains the existence of an alternative design. *Id.* at 8. Plaintiff further submits that his breach of express warranty claim should survive because the filling instructions, which instruct that a user "may" need to place their finger over the barrel, warrants that doing so will provide the user with a safe filling experience. *Id.* at 15.

Relevant to his redhibition claim, Plaintiff argues that the two defective products at issue—the air rifle and its replacement valve—each contain their own redhibitory vices. *Id.* at 15–16. Plaintiff does not explicitly discuss, however, the elements of a redhibition claim in relation to the facts submitted on summary judgment.

Defendants replied, largely arguing that the Court should strike the three affidavits attached to Plaintiff's opposition. R. Doc. 64. Plaintiff attached his own affidavit, R. Doc. 59-2, an affidavit of his expert gunsmith Kennith Comeaux, R. Doc. 59-3, and an affidavit of his air mechanics expert William Caster, R. Doc. 59-4. Defendants assert that the experts' affidavits should be stricken for a myriad of reasons, including but not limited to their containment of (1) statements "correcting" prior sworn testimony without an explanation as to why, (2) statements that operate as "new reports from the[] experts [that] contain opinion and fact recitations that were not disclosed in their Rule 26 reports or in their deposition testimony," (3) statements that constitute impermissible hearsay, and (4) specific to Plaintiff's affidavit, statements not made from personal knowledge and premised with the clause "upon information and belief." *Id.* at 1–4. Defendants argue that, in the event the Court does not strike Plaintiff's affidavit, the Court should observe that the affidavit establishes Cornwell as a "sophisticated user" as defined by the LPLA. *Id.* at 4–5.

## III.    LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with

specific facts showing there is a genuine dispute for trial. Fed. R. Civ. P. 56(c*); Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if its resolution in favor of one party may affect the outcome of the case. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

## IV.    ANALYSIS

Defendants ask this Court to dismiss four of Plaintiff's claims because Plaintiff lacks the necessary genuine material facts to support every element of each claim. Plaintiff asks this Court to review the record evidence, including three affidavits, and determine that he does have sufficient factual support to allow these four claims to be presented to the jury. Because Defendants takes issue with Plaintiff's affidavits, the Court will first discuss whether the affidavits comply with the applicable rules and can serve as summary judgment evidence. It will then assess the competent record evidence and determine whether Plaintiff has submitted sufficient factual support for each of the four theories challenged by Defendants.

### A.  Summary Judgment Evidence—Affidavits

Plaintiff's opposition attaches three affidavits: Plaintiff's affidavit, R. Doc. 59-2, an affidavit of Plaintiff's gunsmith expert Kennith Comeaux, R. Doc. 59-3, and an affidavit of Plaintiff's air mechanics expert William Caster, R. Doc. 59-4.  For the following reasons, the Court will not consider any of the affidavits attached to Plaintiff's motion.

### 1.  Plaintiff's Affidavit

Rule 56 of the Federal Rules of Civil Procedure provides that a party supporting a factual position may do so with, *inter alia*, affidavits. Affidavits, no matter if used to support or oppose a

summary judgment motion, "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Court may refuse to consider affidavits as competent summary judgment evidence if they do not comport with these requirements. *E.g.*, *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003) ("Because [the defendant's] affidavit is expressly based merely on information and belief, it . . . fails the requirements of summary judgment evidence.").

Plaintiff's affidavit is not appropriate summary judgment evidence. After the first few introductory sentences, his affidavit states, "Upon information and belief, Affiant attests herein to the following facts pertaining to this action:" and thereafter proceeds in eight paragraphs. R. Doc. 59-2. The Federal Rules of Civil Procedure require affidavits to be made on personal knowledge, and the Fifth Circuit has held that statements "based merely on information and belief . . . fail[] the requirements of summary judgment evidence." 340 F.3d at 312. Under a strict application of the Fifth Circuit's precedent, each of the succeeding eight paragraphs cannot be considered by this Court as competent summary judgment evidence. *See Obregon v. United States*, 791 F. App'x 458, 461 (5th Cir. 2019) (reading out a portion of an affidavit where the affiant stated that she had "belief" of something and only considering other parts of her statement which were based on personal knowledge); *Lejeune v. Prod. Servs. Network U.S., Inc.*, No. 11-2482, 2014 WL 3587495, at *3 (E.D. La. July 21, 2014) (refusing to consider an affidavit where the affiant stated that he "believed" certain facts, so the "facts" were not based on personal knowledge); *Whitney Bank v. Nafel*, No. 14-208, 2015 WL 1457528, at *10 (M.D. La. Mar. 30, 2015) (striking the defendants' affidavit for failure to meet the personal knowledge requirement).

Even if the Court were to read out the prefacing statement in Plaintiff's affidavit, the Court would not consider the affidavit as competent evidence because all of the statements found in the

following eight paragraphs: (1) reiterate facts already present in Plaintiff's deposition, (2) set out facts that would be inadmissible as evidence, (3) do not lay an appropriate foundation to explain why Plaintiff is competent to testify on the matter, and/or (4) contain conclusory allegations without sufficient supporting facts to be competent summary judgment evidence. *See Bentz-Seiders v. Dollar Gen. Corp.*, No. 19-003, 2020 WL 13430019, at *3–5 (N.D. Tex. June 5, 2020) (explaining why the court would not consider an affidavit, and then detailing why the outcome would not change even if the court had considered the affidavit).

The Court will not strike Plaintiff's affidavit, but it will not utilize any statements in it as "facts" in assessing the summary judgment evidence. The Court notes that it would have come to the same ultimate determination on each of the four liability theories even if it would have utilized any non-conclusory, admissible, substantiated, and personal knowledge-based factual statements in Plaintiff's affidavit.

### 2. Plaintiff's Experts' Affidavits

Plaintiff also submitted affidavits of two of his experts. Rule 26 of the Federal Rules of Civil Procedure provides parameters for the timely disclosure of expert-related materials, and parties are obligated to comply with Rule 26's requirements by the deadlines set forth in the scheduling order. Fed. R. Civ. P. 16. The purpose of the rule "is to avoid the disclosure of 'sketchy and vague' expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) (citing Rule 26's advisory committee notes). If a party does not produce witnesses and evidence by the scheduling order's deadlines, Rule 37(c)(1) provides an "automatic exclusion of witnesses and information that should have been provided under Rule 26(a) . . . but was not." *Guidry v. Aventis Pharms., Inc.*, No. 03-493, 2005 WL 8155425, at *1 (M.D. La. Dec. 20, 2005) (discussing Rule 37). Specifically, Rule 37 states that parties who "fail[] to provide

information . . . as required by Rule 26(a) or (e) . . . *[are] not allowed to use that information* . . .
unless the failure was substantially justified or is harmless." (emphasis added).

In addition to Rule 56's requirements for summary judgment affidavits, and in the context
of expert affidavits specifically, "[a] subsequent expert affidavit submitted to rebut a summary
judgment motion may be excluded if it differs from an earlier Rule 26 report." *Brumley v. Pfizer,
Inc.*, 200 F.R.D. 596, 603 (S.D. Tex. 2001). "Courts have also refused to consider expert affidavits
where those affidavits offer opinions that contradict prior testimony or offer entirely new opinions
not contained in expert reports." *Gamboa v. Centrifugal Casting Mach. Corp.*, No. 14-1273, 2015
WL 6835359, at *5 (S.D. Tex. Nov. 6, 2015) (collecting and explaining cases).

The Court will not consider either expert affidavit as competent summary judgment
evidence. The second scheduling order, R. Doc. 30, required Plaintiff to comply with Rule
26(a)(2)'s expert disclosure requirements by October 14, 2025. R. Doc. 30 at 1. Both expert
affidavits are dated December 12, 2025—notably, nearly two months after its disclosure deadline,
and ten days after Defendants filed their motion for partial summary judgment. R. Docs. 59-2, 59-
3, 49. This presents a problem because, after careful review, the Court observes that both affidavits
contain statements and conclusions that could not be found in the experts' reports and testimony.

Moreover, Plaintiff provides no explanation as to why these affidavits should fall within
Rule 37's untimeliness exception. He does not explain how or why his failure to disclose the "new"
information in the affidavits is substantially justified or is harmless. Fed. R. Civ. P. 37. "For those
failures that are not substantially justified or harmless, this sanction [of exclusion] is 'self-
executing' and 'automatic.'" *Tri Invests., Inc. v. United Fire & Cas. Co.*, No. 18-116, 2019 WL
13114346, at *2 (S.D. Tex. Dec. 10, 2019) (citing Fed. R. Civ. P. 37(c)(1), Advisory Comm. Note
(1993)). Thus, because the experts' affidavits go beyond the scope of the experts' reports and

testimony, and the affidavits were executed well after Plaintiff's disclosure deadline, the Court will not utilize the experts' affidavits as further evidence in support of Plaintiff's claims. *See Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997) ("District judges have the power to control their dockets by refusing to give . . . litigants a second chance to develop their case.").

To the extent the expert affidavits reiterate, restate, or expand on the experts' timely-issued reports and testimony, the Court will rely on the timely-issued documents in its summary judgment analysis. Overall, and in lieu of striking all the three affidavits, the Court will not consider any of the three affidavits attached to Plaintiff's opposition in the following analysis.

### B. Claims Subject to Summary Judgment

The Court now turns to evaluate whether the evidence demonstrates that Plaintiff can support the essential elements of four of his six total claims. Defendants press that Plaintiff lacks competent summary judgment evidence to sustain construction defect, design defect, and breach of express warranty claims under the LPLA, as well as claims in redhibition pursuant to La. Civ. Code art. 2520. For the following reasons, the Court finds that Plaintiff's construction/manufacturing defect claims and redhibition claims do not survive summary judgment, but his design defect claims and breach of express warranty claims do and may proceed to trial.

### 1. Construction/Manufacturing Defect

Plaintiff asserts that the air rifle and its replacement value were unreasonably dangerous in construction or composition. A product is unreasonably dangerous in its construction or composition if "at the time the product left its manufacturer's control, [it] deviated in a material way from the manufacturer's specifications or performance standards for the product or from

otherwise identical products manufactured by the same manufacturer." La. R.S. § 9:2800.55. A claimant must demonstrate not only the manufacturer's specifications or performance standards for the particular product, but also how the product materially deviated from those standards so as to render it "unreasonably dangerous." *Jenkins v. Int'l Paper Co.*, 41,566 (La. App. 2 Cir. 11/15/06), 945 So. 2d 144, 150. "This is a narrow and demanding test" because the plaintiff must show "that the *particular* product used by the [relevant individual] deviated from its intended design." *Guidry v. Janssen Pharms.*, 206 F. Supp. 3d 1187, 1197–98 (E.D. La. 2016).

Defendants argue that Plaintiff cannot prevail on his construction/manufacturing defect claim because (1) his experts do not opine, and are not qualified to opine, on whether the air rifle or replacement valves at issue were manufactured in accordance with Defendants' standards, and (2) the air rifle—both at the time of the incident and its inspection by Plaintiff's experts—was not the same as it was when it left the manufacturer. R. Doc. 49-1 at 15–16.

Plaintiff submits that Wiley's testimony creates sufficient material facts to support a manufacturing defect claim. Wiley testified that the air rifle at issue here bore serial number 079. R. Doc. 59-5 at 2. When asked if Riley knew how the air rifles were serialized, "like the first one that came out is Number 1, and this was Number 79," he stated that he did not "know the exact answer to that, but [he] believe[d] that [was] correct." *Id.* at 7. Plaintiff connects this testimony to Wiley's answer "no" to the question, "Have there been any other accidents or complaints of malfunctions other than with Mr. Cornwell?" *Id.* at 5. Plaintiff argues that this testimony, when viewed together, supports his position that "the subject air rifle and its two air valve assemblies are the only two products of the 78 earlier air rifles and valve assemblies to fail, [so] serial number 0079 . . . deviated and was unreasonably dangerous in its construction and composition." R. Doc. 59 at 7.

The Court finds that the foregoing presents only a vague and tenuous conclusion, and otherwise does not satisfy all the required elements to support a construction/manufacturing defect claim. "Plaintiff has neither identified the applicable specifications or standards nor demonstrated that the [products] at issue deviated from those standards in any way." *Power v. Louisville Ladder Inc.*, No. 19-14627, 2020 WL 3971278, at *3 (E.D. La. July 14, 2020). He has only generally established that it is possible that 78 other air rifles were manufactured before the air rifle at issue here, and that Wiley is not aware of any other injurious incidents with this model air rifle.

Moreover, Plaintiff's air mechanic's expert Caster testified that he "d[id] not have any of the specs that [the air rifle] was designed off of," so he could not answer the question, "Was the valve itself properly manufactured, or was this a design problem?" R. Doc. 57-5 at 88. The statute explicitly requires plaintiffs to rely on the manufacturer's specifications so that they can demonstrate how the at-issue product contained particularized deviations from the relevant specification. *Cf. Walker v. Manitowoc Co.*, No. 2016-897 (La. App. 3 Cir. 10/10/18), 259 So. 3d 465, 475 (finding evidence sufficient to raise a genuine issue of material fact on a construction/composition defect claim when the plaintiffs submitted (1) deposition testimony of defendants' former Director of Product Safety who detailed that a crane's plans and specifications called for a certain product to be applied to its screws, and (2) evidence of a microscopic examination of the screws of the particular crane at issue, conducted after the alleged accident, which indicated that the product was not applied to those specific screws).

Without any evidence of what it means for this particular air rifle model and valve to be properly manufactured, and without any documents or testimony detailing an aspect of Plaintiff's specific air rifle and replacement valve that differed from a properly manufactured product, Plaintiff's construction defect claim must fail.

### 2. Design Defect

Plaintiff asserts that the air rifle and replacement valve are unreasonably dangerous due to a design defect. Under the LPLA, a product is unreasonably dangerous in design if, at the time the product left its manufacturer's control: (1) there existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. La. R.S. § 9:2800.56. Thus, "[i]n order to demonstrate that a product is unreasonably dangerous in design, the plaintiff must (1) identify a specific alternative design that existed and was capable of preventing his injury; and (2) perform the requisite risk-utility analysis." *Gray v. Indus. Plant Maint.*, No. 01-1167, 2004 WL 1661209, at *5 (E.D. La. July 23, 2004) (citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000)).

"Louisiana law does not allow a fact finder to presume an unreasonably dangerous design solely from the fact that injury occurred." *Celino v. Biotronik, Inc.*, No. 20-2298, 2021 WL 2982971, at *2 (E.D. La. July 15, 2021). Therefore, in all but the most basic cases, expert evidence is required to support an allegation that a product is defective in design. *McCarthy v. Danek Med., Inc.*, 65 F. Supp. 2d 410, 412 (E.D. La. 1999) ("Without expert or technical evidence to support the contention that the design was defective or to establish an alternative design, plaintiff has failed to create an issue of fact to be left to a jury"). The Fifth Circuit has acknowledged, however, that "there may be cases in which the judge or the jury, while relying on background knowledge and 'common sense,' can 'fill in the gaps'" and "estima[e] the extent of the risk avoided, the costs of implementing the proposed design change, or the adverse effects of the design modification on the utility of the machine." *See Morgan v. Gaylord Container Corp.*, 30 F.3d 586, 591 (5th Cir. 1994)

12

(quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 184 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)).

Defendants press that Plaintiff cannot prevail on his design defect claim because he has no evidence of a design defect, but to the extent that his experts passively opined on an alternative design, neither engaged in a risk-utility analysis. R. Doc. 49-1 at 12–15. The Court finds that there is enough evidence that an alternative design existed. Caster, Plaintiff's air mechanics expert, described that over the course of his decades-long career he has worked with high-pressure machines operating with PSIs close to the subject air rifle's PSI, and these machines operate using springs to seat valves. R. Doc. 57-5 at 85–88. Comeaux, Plaintiff's gunsmith expert, testified to his familiarity of the designs of other air rifles and his business's status as a Benjamin warranty station, which means he is authorized by Benjamin to repair their rifles. R. Doc. 57-4 at 41–42. Thus, Comeaux can testify as to other designs that were on the market at the time of Plaintiff's injury. Taken together, the experts' testimony could allow a reasonable juror to conclude that an alternative design—namely, the use of a spring to seat the valve—existed commercially around the date of injury.

As to the risk-utility analysis, the Court finds that a reasonable jury is capable of performing the risk/utility balancing test in this case based on the record evidence. The Fifth Circuit has stated that they "do not mean to suggest that the plaintiff must, in every case, introduce evidence that details and quantifies the risk and the burden incurred in order to prevail under the design theory set out in the LPLA." *Lavespere*, 910 F.2d at 184. But for this to be possible, "the product itself, or at least the design feature in question, must be relatively uncomplicated, and the implications of the change in design must be such that a layman could readily grasp them." *Id.* In this case, a reasonable juror would be able to rely on background knowledge and common sense

in understanding the inherent risk in placing one's thumb over the muzzle of *any* air rifle or similar item.

Moreover, while expert testimony may be necessary to explain the mechanics of seating the valve in an air rifle either using a spring or not using a spring, the inherent concept of an air rifle *having* a spring versus not having a spring is not the kind of concept that "demand[s] a complex, statistical risk-utility analysis." *McDaniel v. Texas USA, LLC*, 466 F. App'x 365, 377 (5th Cir. 2012). Instead, the alternative design of a valve that uses a spring is the kind of alternative design that "is 'uncomplicated' enough for a layman to 'readily grasp:'" the air rifle either has a spring and the valve seats automatically, or it does not have a spring and requires assistance in seating the valve. *Id.* (quoting *Krummel*, 206 F.3d at 522 n.4).

The relatively uncomplicated nature of the spring-versus-no-spring concept is evidenced by Plaintiff's own actions taken after the subject incident. Plaintiff posted on social media shortly after the alleged accident stating that he "placed a spring from an ink pen on the valve stem before putting the top hat back on." R. Doc. 57-11. The factfinder could reasonably infer from Plaintiff's own solution that the manufacturer did not face a high burden in changing the design of this air rifle to include a valve spring. Overall, "while the evidence is not certain to result in a favorable jury verdict, it is not so overwhelmingly deficient as to preclude the possibility that a reasonable jury might" find that the air rifle and replacement valves were unreasonably dangerous in design. *McDaniel*, 466 F. App'x at 377. Plaintiff's design defect claim survives.

### 3. Breach of Express Warranty

Defendants take the position that Plaintiff has not identified an express warranty that they could have breached. An express warranty is defined under Louisiana law as "a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that

represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance." La. R.S. § 9:2800.53(6). Notably, "'Express Warranty' does not mean a general opinion about or general praise of a product." *Id.*

The LPLA provides that "[a] product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was not true." La. R.S. § 9:2800.58. Therefore, to survive summary judgment, there must be evidence that "(1) the manufacturer made an express warranty regarding the product, (2) the plaintiff was induced to use the product because of that warranty, (3) the product failed to conform to that express warranty, and (4) the plaintiff's damage was proximately caused because the express warranty was untrue." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 452 (5th Cir. 2002).

Plaintiff argues that Defendants' "entire manual [for the air rifle] should be considered [an] express warranty." R. Doc. 59 at 15. The air rifle's "Safety and Filling Instructions," R. Doc. 59-1, appear in a four-page document, with the second page listing the "Safety Instructions" and the third page listing the "Filling Instructions." R. Doc. 59-1 at 2–3. Under "Filling Instructions," the final line reads: "You may need to cover the barrel with your finger when filling." *Id.* at 3. Plaintiff submits that the portion of the "Filling Instructions" directing him to place his finger over the barrel must be observed in its context: adjacent to the safety instructions. Thus, to Plaintiff, each statement made in the "Filling Instructions" constitutes an express warranty because, due to their proximity to the safety instructions, they "expressly warrant[] a user a safe shooting experience." R. Doc. 59 at 14.

The Fifth Circuit has found that statements in an owner's manual can be construed by a reasonable juror to constitute an express warranty. In *Caboni v. General Motors Corp.*, the Fifth Circuit reversed a district court's entry of summary judgment on a breach of express warranty claim when it found that a statement in a car's manual could have been determined to go beyond "general opinion" or "general praise" about a car's air bag system. 278 F.3d at 452–53. There, the plaintiff's air bag did not deploy upon his impact into an interstate guardrail. *Id.* at 450. The plaintiff argued that his vehicle's manual included statements that expressly warranted when his airbag would inflate. *Id.* at 452. The Fifth Circuit agreed, reasoning that a juror could find that the statement "[t]he air bag is designed to inflate in moderate to severe frontal or near-frontal crashes" created an express warranty. *Id.* at 453. It determined that "[a] reasonable jury could find that the passage is a 'representation' or 'statement of alleged fact' about the air bag system that 'represents' or 'affirms' that the air bag will meet a 'specified level of performance,' i.e. inflate in moderate to severe frontal or near-frontal crashes." *Id.* (quoting La. R.S. § 9:2800.53(6)).

Like the Fifth Circuit found in *Caboni*, the Court here finds that a reasonable juror in this case could conclude that the statement "You may need to cover the barrel with your finger when filling" constitutes a "representation, statement of alleged fact or promise" that the air rifle was constructed to operate in a way wherein it would be safe to follow the instructions and place one's finger over the air rifle's barrel. The plausibility of this potential conclusion is supported by the "Filling Instructions" being found in the same document as the safety instructions. R. Doc. 59-1. Thus, a reasonable factfinder could determine that the filling instruction "affirms or promises that the product . . . possesses specific characteristics or qualities or will meet a specified level of performance" to function in a way wherein it would be safe to follow the instruction. La. R.S. § 9:2800.53(6).

16

Similarly, Plaintiff submitted sufficient summary judgment evidence to support the other three elements of a breach of express warranty claim. As to inducement, Plaintiff testified in his deposition that he spoke to one of Defendants' employees before his injury about whether "there was anything that they sold to block off the end of the barrel with for an initial fill." R. Doc. 59-2 at 21. Then, shortly after the incident, he posted to social media, saying, "Never did like how the instructions said to place your finger over the muzzle knew better did it anyway . . . ." R. Doc. 57-11. Taken together, a reasonable juror could conclude that Plaintiff was induced to place his thumb over the barrel because the safety and filling instructions said to do so, especially when considering his potential hesitancy to follow the instructions. And because Plaintiff's thumb was allegedly injured when it was placed over the air rifle's barrel in accordance with Defendants' instructions, a factfinder could determine that the product did not conform to the filling instructions' express warranty and that it's lack of conformity proximately caused Plaintiff's injuries. His breach of express warranty claim will survive summary judgment.

### 4. Redhibition Claims

Finally, Defendants submit that Plaintiff does not have sufficient evidence to support a redhibition claim for both the air rifle and the replacement valve assembly. Redhibition claims are permissible in the LPLA context because the LPLA, despite its exclusivity provision, carves out redhibition claims from its definition of "damages." *See* La. R.S. § 9:2800.52 (exclusivity provision); La. R.S. § 9:2800.53(5) (definition of damages). Thus, "[c]ourts have interpreted the LPLA as preserving redhibition as a cause of action only to the extent the claimant seeks to recover the value of the product or other economic loss." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 251 (5th Cir. 2002). Here, Plaintiff's redhibition claim concerns the economic damages related to both the air rifle and the replacement valve assembly.

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it had he known of the vice." *Alston v. Fleetwood Motor Homes of Ind., Inc.*, 480 F.3d 695, 699 (5th Cir. 2007) (citing La. Civ. Code art. 2520). "A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price." La. Civ. Code art. 2520. In order to prevail in a suit for redhibition, the plaintiff must prove that "(1) the thing sold is absolutely useless for its intended purposes or that its use is so inconvenient that it must be supposed that he would not have bought it had he known of the defect; (2) that the defect existed at the time he purchased the thing, but was neither known or apparent to him; (3) that the seller was given the opportunity to repair the defect." *Alston*, 480 F.3d at 699 (quoting *Dalme v. Blockers Manufactured Homes, Inc.*, No. 2000-00244 (La. App. 3 Cir. 1/25/01), 779 So. 2d 1014, 1028).

Defendants argue that Plaintiff's redhibition claims cannot survive because, *inter alia*, Plaintiff did not tell Defendants in his pre-accident e-mails that the air rifle had a defect. R. Doc. 49-1 at 17. They also argue that Plaintiff's consistent use of the air rifle between the March 2021 purchase date and the January 2023 accident operates against any potential argument by Plaintiff that the air rifle was totally useless for its intended purpose. Plaintiff submits that he requested the second valve assembly from Defendants "in lieu of a request to repair the air rifle." R. Doc. 59 at 16. He also contends that any modifications he made to the air rifle and second valve assembly before the accident do not work against him in demonstrating that the products contained redhibitory vices when they left Defendants' control. *Id.*

The Court finds that Plaintiff has not submitted sufficient evidence to allow his redhibition claims to survive. First, Plaintiff has not directed the Court to any record evidence that supports his position that the air rifle was absolutely useless for its intended purpose or its use was so inconvenient that Plaintiff would not have purchased it had he known of the defect. Upon a search of the record, the Court can find no competent summary judgment evidence to support his position. On the contrary, it appears that the parties do not contest that "Plaintiff fired the air rifle extensively prior to the subject accident" for nearly two years. R. Doc. 66 at 5.

Plaintiff testified in his deposition that he used the air rifle for target practice during the first year he owned it because Louisiana had not yet made the use of these air rifles legal for large game. R. Doc. 59-2 at 16–17. He also used the air rifle both at friends' houses and at a shooting range and tailored the product to his personal specifications through pre-accident modifications, such as painting the gun and replacing "O-rings." *E.g.*, *id.* at 17, 19. Plaintiff cites no deposition testimony describing that he made these modifications to the air rifle for reasons related to it being useless for its intended purpose. Moreover, the Court cannot find testimony or other competent summary judgment evidence to show that Plaintiff would not have purchased the rifle if he had known that the valve was defective, as he alleges. Altogether, the Court finds a lack of evidence to support Plaintiff's redhibition claim as to the air rifle.

Though a lack of evidence on the first element of a redhibition claim is sufficient to enter summary judgment, the Court notes that Plaintiff has not shown any evidence of the other redhibition elements. Plaintiff does not point the Court to any evidence, and the Court cannot find any evidence in the record itself, to show that the alleged defect was hidden and not known to Plaintiff at the time of purchase. Plaintiff similarly fails to show that he provided Defendants with an opportunity to repair the defect.

Plaintiff refers the Court to e-mails that he sent to Defendants about a month before the accident, arguing that "plaintiff warned the defendants about the problems he was experiencing with the product." R. Doc. 59 at 3. Plaintiff's initial e-mail to Defendants states:

> I would like to get a price quote for a new valve assembly for my 408 extreme big bore. Hi [sic] disassembled the gun several times to make small modifications and change out o-rings on the air chamber . . . however I need a new valve [assembly] due to galvanic corrosion which occurred after the gun was dropped in a saltwater marsh.

*Id.* at 1. Defendants replied, stating that "Unfortunately, the Valve assembly is tied to the change tube . . . so if you put on a separate valve the entire gun will be misaligned." *Id.* Plaintiff replied: "Well then can y'all send me a new valve . . . ." *Id.* Five days later, when Plaintiff did not yet hear back from Defendants, he sent a follow-up e-mail, stating in part, "I can rebuild the valve myself . . . Although I would truly prefer that you would just sell me a whole new valve assembly . . . I will go to another machine shop with the original valve and have them make me one." *Id.* at 2.

The Court finds that a reasonable factfinder could not conclude, based on these e-mails, that Plaintiff contacted Defendants in order to place them on notice of a redhibitory defect with their valve. The e-mails contain consistent representations from the Plaintiff that he wanted to purchase a replacement valve on his own accord. Indeed, Plaintiff's initial e-mail to Defendants describes that he "need[ed] a new valve *due to galvanic corrosion* which *occurred after the gun was dropped in a saltwater marsh*." R. Doc. 49-5 at 1 (emphasis added). These facts do not serve to support a redhibition claim and, at best, present only a scintilla of evidence that the valve *could* have been defective, which is insufficient at the summary judgment stage.

The Court comes to the same conclusion with respect to Plaintiff's redhibition claim as to the replacement valve assembly. Plaintiff did not point the Court to any evidence exhibiting that he communicated with Defendants after purchasing the replacement valve assembly to provide

them with an opportunity to repair its alleged defects. Plaintiff also does not point to competent summary judgment evidence showing that he did not know that the second valve assembly possessed a hidden defect. With a complete lack of evidence as to the third element of a redhibition claim, the Court finds that Defendants are entitled to summary judgment on these claims.

## V.    CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that Defendants' motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED IN PART** as to Plaintiff's manufacturing/construction defect claims and redhibition claims. The motion is **DENIED IN PART** as to Plaintiff's design defect claims and breach of express warranty claims.

New Orleans, Louisiana, this 20th day of January, 2026.

THE HONORABLE ELDON E. FALLON